FARMERS BANK & CAPITAL TRUST COMPANY OF FRANKFORT, KENTUCKY, Appellant,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellee.

No. 93–CA–3032–MR.

Court of Appeals of Kentucky.

Jan. 27, 1995.

**414**

Jack W. Flynn, Darnell & Flynn, Frankfort, for appellant.

Mark R. Overstreet, Stites & Harbinson, Frankfort, for appellee.

Before LESTER, C.J., and GARDNER and McDONALD, JJ.

LESTER, Chief Judge.

This is an appeal from a judgment entered on an opinion dismissing appellant's action for a declaration of rights under certain insurance policies on the life of its assignor.

The trial court entered a well-reasoned opinion in support of its conclusion, and being unable to improve thereon, we adopt it as our own:

> This action comes before the Court on the parties' cross-motions for summary judgment. Plaintiff contends that certain life insurance policies issued by defendant Northwestern Mutual Life Insurance Company were in full force and effect upon the death of the insured, E. Gaines Davis, Jr., and that a surrender of said policies did not occur, such that plaintiff, the owner of the policies, was entitled to the full face value of the policies. Defendant contends that plaintiff executed irrevocable assignments of the policies in favor of Kentucky Central Life Insurance Company as part of an Internal Revenue Code Section 1035(a) tax free exchange, and therefore

had no further interest in the policies. Defendant impleaded Kentucky Central, stating that if it would be adjudged liable to plaintiff, then Kentucky Central would be liable for the breach of its express representations and warranties that no other person, firm or corporation had any interest in the policies.

Under Civil Rule 56 and *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 482 (1991), summary judgment is appropriate where there are no genuine issues of material fact, and a party is entitled to judgment as a matter of law. In this case, the material facts leading up to the present dispute are not in contention. Beginning in October 16, 1953, defendant Northwestern issued five life insurance policies, under policy numbers, 4557629, 4968493, 5053357, 5169388, and 6353154, on the life of E. Gaines Davis, Jr.. Each policy gave the policy owner the right to surrender the policy for its cash surrender value. For example, Policy No. 4557629 read:

> Upon receipt at the home office of this policy and of a full and valid surrender of all claims thereunder, without the consent or participation of any direct beneficiary not irrevocably designated or any contingent beneficiary, the insurance hereunder shall terminate and the company will pay, as directed, the cash value less any indebtedness ... No request, revocation, or change in connection with the nonforfeiture, surrender and loan provisions shall be effective until filed at the home office.

The provisions in the other policies contain substantially the same language.

On January 25, 1971, Mr. Davis entered into a trust agreement with plaintiff whereby he purported to "grant, convey, assign, and deliver unto the Trustee [plaintiff], its successors and assigns the policies of insurance set forth in Exhibit A, attached thereto, under which Elmer Gaines Davis, Jr. is the insured, and is causing the death proceeds thereunder to be made payable to Trustee, said proceeds to be held in trust and distributed as hereinafter set out." Listed on Exhibit A were the

five Northwestern policies. The trust instrument created an irrevocable trust, reserving no power in Davis as settlor to alter, amend, or revoke the Trust Agreement. On January 27, 1971, Davis filed an ownership change form which designated plaintiff as the owner of all the policies.

As part of a "1035 exchange", under which I.R.S. permits a tax-free exchange of life insurance for another life insurance policy, plaintiff transferred its entire interest in the five Northwestern policies to Kentucky Central on August 5, 1988. Plaintiff executed an "absolute assignment" form which provided that:

> In the event that Kentucky Central Life Insurance Company ("Company") gives underwriting approval for a new life policy as described in the above application for life insurance to the Company, I assign all right, title and interest in and to the above (Northwestern) Policy to the company in an exchange intended to qualify under Section 1035 of the Internal Revenue Code.
>
> I understand and agree that:
>
> .　.　.　.　.
>
> 3. by executing this assignment, I irrevocably waive all rights, claims and interests under the existing [Northwestern] Policy if the company approves my application for insurance.
>
> .　.　.　.　.
>
> I represent and warrant that no other person, firm, or corporation has an interest in the existing [Northwestern] Policy, except the undersigned.

This "absolute assignment" form also contained provisions relating to the surrender of the Northwestern policies for their cash value. These provisions stated:

> I understand and agree that:
>
> 1. if the company underwrites and approves my application for and issues to me a new life insurance policy on the life of the same insured as in the [Northwestern] Policy, the company intends to surrender the existing [Northwestern] Policy for the cash value and that existing [Northwestern] Policy will no longer

be in force and effect as of the surrender date.

> 2. upon receipt of the surrender value by the company, the proceeds will be applied toward the new life insurance policy . . .

These forms were mailed by Kentucky Central and received by Northwestern on August 29, 1988.

On October 10, 1988, Kentucky Central issued Policy No. 1 VPB398802 in the amount of $125,000 on the life of Mr. Davis. The policy stated that it was being issued as a replacement of other policies. On October 24, 1988, Kentucky Central wrote Northwestern and requested that the five policies be surrendered. Kentucky Central submitted a Northwestern surrender form, which was received in Northwestern's home office on December 13, 1988. The surrender form signed by Kentucky Central was sent back to Kentucky Central on December 15, 1988 because Kentucky Central had omitted the taxpayer identification number on the form.

On December 6, 1988, the secretary for Mr. Davis wrote Northwestern requesting that the company rescind the agreement by which there was a transfer of insurance policies. On December 21, 1988, Patricia Mulhorn, a service technician for Northwestern, responded to the letter by stating that the policies had not been surrendered yet, relying upon entries in her computer terminal. She also mailed a copy of the secretary's letter, a release of assignment form, and a change of beneficiary form to Kentucky Central.

Mr. Davis died on January 4, 1989. Northwestern paid Kentucky Central the cash surrender value of the five policies on March 15, 1989. On March 28, 1989, Kentucky Central paid $73,659.81 on its Policy No. VPB398802 as the incontestable part of the policy's $125,000 death benefit. The remainder of the death benefit was paid following completion of an incontestability investigation by Kentucky Central. Following the erroneous payment of the benefits to Sally P. Davis as beneficiary, and pursuant to a February 5, 1990, agree-

ment, Mrs. Davis recognized the mistake and paid over to plaintiff the death benefits under the policy.

■ The only issue of law in this case involves a determination of the effective date of the surrender and cancellation of the insurance policies on the life of E. Gaines Davis. Plaintiff argues that the policies had not been cancelled or surrendered and that there were ongoing negotiations up until the time of Mr. Davis' death with regard to the surrender such that the policies were still in effect. Defendant Northwestern Life contends that the policies were cancelled and surrendered as of December 13, 1988. The defendant sets forth several cases for the proposition that the policies in question granted the policyholder the absolute right to surrender the policies in return for payment of their cash surrender value. These cases state that such a provision is a "continuous, irrevocable offer which becomes a binding contract when accepted by the owner of the policy." *Sonnenstein v. Massachusetts Mutual Life Insurance Co.,* [225 Pa.Super. 74] 301 [A.2d] S.2d 371, 373 (Pa.Super.Ct.1973). *Accord, Mercantile National Bank v. Franklin Life Insurance Co.,* 248 F.2d 57, 59 (5th Cir. 1057); *Pacific Life Insurance co. v. Bryce,* 67 F.2d 710, 712 (10th Cir. 1933); *LaDow v. New England Mutual Life Insurance Co.,* 727 F.Supp. 1399, 1401 (D.Kan.1989); *Hays v. Fidelity Industrial Credit Co. of Ogden,* 549 P.2d 701, 702 (Utah 1976). When the owner of the policy accepts the outstanding offer, the insurer then has "no right, option or privilege to reject the unconditional notification of the exercise by insured of his right to accept the cash surrender value, and when so notified in unqualified terms, the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation." *Green v. American National Insurance Co.,* 452 S.W.2d 1, 3 (Tex.Ct.Civ.App.1970). The acceptance by the owner creates the obligation to pay and the insurance company has no right to reject the surrender. *Sonnenstein,* [301 A.2d] at 373; *LaDow,* at 1402. A Kentucky case, *Northwestern Mutual Life Insurance Company v. Joseph,* Ky., 103 S.W.

317 (1907), also recognizes that, upon the owner's acceptance of the offer to surrender, the surrender was irrevocable. This is true even if the payment of the cash surrender value does not occur until after the insured dies. *Northwestern Mutual,* at 318.

■ Plaintiff points out several facts in its memorandum which, it believes, control the situation at bar. In particular, it argues that the ongoing communications between Northwestern and Mr. Davis and Northwestern's subsequent actions and statements with regard to the surrender establish that an actual surrender never took place. We do not agree. The case law cited to us by defendant is persuasive. The policies were surrendered as of December 13, 1988, despite these further occurrences. Kentucky Central became the owner of the Northwestern policies by virtue of the transfer on August 5, 1988, and the issuance of a new life insurance policy on October 10, 1988. It surrendered the policies at Northwestern's home office on December 13, 1988. At that point, Northwestern could not have rescinded the transaction, in the face of Kentucky Central's unequivocal assent to the outstanding offer. Davis did not have the power to rescind the transaction, as he was not the owner of the Northwestern policies. Plaintiff owned the policies and took those steps which resulted in the transfer of those policies to Kentucky Central and the surrender of the insurance for its cash value. Additionally, plaintiff received the death benefits from the Kentucky Central policy as a result of the section 1035 exchange.

Therefore, the court hereby finds that there are not material issues of fact and that defendant Northwestern Mutual Life Insurance Company is entitled to judgment as a matter of law. This action is DISMISSED.

The judgment is affirmed.

All concur.